[Civ. No. 27946.    Second Dist., Div. One.    June 1, 1964.]

JOSEPH L. BICKSTON, Plaintiff and Appellant, v. FED-
ERAL FIREARMS CORPORATION OF CALIFOR-
NIA et al., Defendants and Respondents.

Milton Fenton for Plaintiff and Appellant.

Zimmerman & Kelly and Brian J. Kennedy for Defendants and Respondents.

KINCAID, J. pro tem.*—Plaintiff appeals herein from an order denying the motion to vacate a judgment and enter a different judgment under California Code of Civil Procedure, section 633, subdivision 1. The judgment was rendered in plaintiff's favor in several particulars, but the court found against him and judgment was denied as to the second cause of action of the second amended complaint and as to his supplemental complaint.

By the several causes of action, plaintiff sought recovery against the defendant corporation for money loaned and for wages earned; against defendant Leo J. Lippe for money loaned to him; as a minority stockholder action against the defendant corporation, its officers and board of directors for wrongfully applying assets; against the defendant corporation and some of its officers for wrongfully paying over assets of the corporation to defendants George H. Worrall and Raymond B. Evans; and to require Worrall and Evans to pay

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

back to the corporation the sum of $13,100 they collectively received from the corporation wrongfully.

The trial court found and judgment was given for plaintiff that he recover from defendant Lippe $5,000 with interest and from defendant corporation $5,050 with interest. The court further found that defendant corporation did not wrongfully or illegally pay over to defendants Evans and Worrall any money whatsoever, and that there was no liability against the board of directors or officers as individuals for mismanagement or wrongful action on the part of the corporation for disposing of its assets.

The factual evidence is without material conflict and discloses generally that Lippe approached plaintiff with a proposition involving the purchase of a quantity of foreign guns and accouterments, which were to cost $40,000, and were to be resold for a profit.

Lippe was without funds to invest in the enterprise, and plaintiff was able to raise only $10,000. In order to obtain the remaining $30,000, the other defendants were brought into the transaction. It was agreed that defendant corporation would be used by the parties for their venture and that 200 shares of stock would be issued. Plaintiff loaned Lippe $5,000, which he in turn paid to the corporation in exchange for 50 shares of stock. Evans and Worrall each advanced $15,000 of which $5,000 went to the corporation in exchange for their 50 shares of stock, the remaining $10,000 so advanced being evidenced by a promissory note to each representing a loan to the corporation, repayable on or before May 15, 1957, with interest at 10 per cent per annum. Plaintiff purchased 50 shares of stock for $5,000, the remaining $5,000 representing a loan by him to the corporation.

Plaintiff additionally loaned to the corporation $3,430.29 of which $1,321.53 was repaid through the delivery of merchandise, leaving a balance owing him on the loans of $7,108.76.

On or about September 3, 1957, collateral written agreements were executed whereby plaintiff and Lippe agreed to purchase and Evans and Worrall each agreed to sell to them their respective 50 shares of stock on or before July 1, 1958, for the sum of $9,000, a total of $18,000. The corporation was not a party to these collateral agreements.

Both plaintiff and Lippe worked for the corporation at the agreed rate of $600 per month. Lippe was paid in full for a period of about 22 months, totaling approximately $13,200.

Plaintiff earned as salary $7,900, of which he was paid $2,850, leaving a balance owed him of $5,050 for services rendered. Evans and Worrall performed no services for the company.

On July 16, 1958, plaintiff left the State of California as a fugitive from a federal criminal charge, and remained away for over a year without advising as to his whereabouts.

Lippe, as president of the corporation, called a meeting of the remaining board of directors, and notice thereof was mailed to plaintiff's residence. Thereupon, the remaining directors, consisting of Lippe and Herndon Hughes, took action removing plaintiff as an officer and director of the corporation. Plaintiff continued as a stockholder and as a creditor of the corporation. Hughes soon thereafter resigned both as an officer and as a director, and the wife of Lippe became a director. Lippe, thereupon, proceeded to systematically convert all of the assets of the corporation into cash, and by April 1959 the total corporation assets consisted of the sum of $13,750.

Thereafter, without a meeting of the board of directors or the stockholders, or without any notice to the stockholders whatsoever, Lippe paid over to each of defendants Evans and Worrall the sum of $6,550 on the collateral agreements heretofore described, and said defendants assigned their respective 50 shares of stock to the corporation which holds them for the use and benefit of plaintiff and Lippe. These payments were made without notice to plaintiff.

As a result of the payment of the sum of $13,100 by Lippe to defendants Evans and Worrall for the purchase of the stock there remained in defendant corporation assets of about $650 only.

The court found it to be true that, during the month of April 1959, Lippe, acting without authorization of the board of directors or of the stockholders of defendant corporation, paid over the sum of $6,550 of defendant corporation's money to Evans for the purchase of his 50 shares of stock, and a like sum to Worrall for the purchase of his 50 shares, in order to carry out, at a lesser compromise figure, the collateral agreements of plaintiff, Lippe, Evans and Worrall. The court further found that, by paying to said stockholders the $13,100 in exchange for their 100 shares of stock, the corporation extinguished its debt to plaintiff of the $5,000 he had loaned and the balance of $2,108.76 he had advanced to the corporation.

Plaintiff's appeal is based upon his contention that Lippe and the corporation acted without authority or right in paying corporate funds to Evans and Worrall in behalf of plaintiff and Lippe.

Defendants contend that at the time of payment of the $13,100 to Evans and Worrall in purchase of their stock plaintiff and Lippe each had sufficient credits due them by the corporation to cover their respective one-half shares thereof. The evidence fails to support this contention. Plaintiff was then owed $12,158.76 by the corporation but Lippe was owed nothing. He had no credits accruing to him whatsoever. He had been paid his salary in full and his only other contribution was the $5,000 he had borrowed from plaintiff which was originally applied as the purchase price of his 50 shares of stock. As a result of the transaction whereby he acquired 50 more shares through the purchase from Evans and Worrall he paid nothing for them and corporate funds were used in his behalf without corporate or plaintiff's authorization.

In turn the court found that Lippe, by the use of corporate funds in acquiring the 50 shares for plaintiff in such purchase, properly used and credited him for $7,108.76 of the total admittedly due him and gave judgment for plaintiff against the corporation for the balance of $5,050. Aside from the lack of authorization no reasonable explanation appears as to how the purchase price of $6,550 paid by the corporation for the 50 shares credited to plaintiff could extinguish an indebtedness due him of $7,108.76.

The stock purchase agreements of September 3, 1957, were between plaintiff and Lippe as individual purchasers and Evans and Worral as sellers. The corporation was not a party thereto. Lippe contends that, before plaintiff left, they discussed the possible use of corporate funds and funds accruing to their capital accounts as a proper source of money with which to purchase the stock. Plaintiff denies that he ever authorized the corporation or Lippe to act for him in the purchase of the stock described in the agreements or that any money due him by the corporation was to be so used. The corporation did not authorize payment of any of its funds for such purchase or the crediting of any of its moneys so used to the debt it owed plaintiff.

Whatever plaintiff's reasons may have been for absenting himself from the state and from the corporate business for over a year he was entitled, as a stockholder and

creditor, to the protection of both the corporation's bylaws and the laws of this state. Upon his return he found himself in the position of being the alleged owner of 100 rather than 50 shares of stock in a corporation devoid of assets. His total investment in the company in money and labor had been $26,330.29, of which he had been repaid in salary or otherwise $4,171.58, leaving a total investment and loss of $22,158.71. Lippe invested nothing and plaintiff now holds a judgment against him for the $5,000 loaned as the purchase price of Lippe's original 50 shares of stock. Lippe also owns 50 additional shares purchased by corporate funds. He drew his salary in full for 22 months. Both Worrall and Evans received $16,900 for their $15,000 investments, each profiting to the extent of $1,900.

Section 3901 of the Corporations Code in pertinent part provides as follows: "A corporation shall not sell, lease, convey, exchange, transfer, or otherwise dispose of all or substantially all of its property and assets except in accordance with one of the following subdivisions:

"     .     .     .     .     .     .     .     .     .     .     .     .     .

"(b) Under authority of a resolution of its board of directors and with the approval of the principal terms of the transaction and the nature and amount of the consideration by vote or written consent of shareholders entitled to exercise a majority of the voting power of the corporation."

It is clear from the evidence herein that the corporation, through the acts of Lippe, its president and a stockholder, and of Evans and Worrall, stockholders, conveyed, exchanged, transferred or disposed of all or substantially all of its property and assets without compliance with the foregoing section of the Corporations Code. Concededly the corporate acts of paying substantially all of its assets in exchange for stock in the names of plaintiff and Lippe were without authority of a resolution of its board of directors and without the approval either by vote or written consent of its shareholders.

It is the rule in this state that, while a corporation may dispose of all its assets and wind up its business when authorized by its directors and approved by a majority of the voting power of its stockholders, the officers or directors have no power to dispose of all or substantially all of its assets without fully complying with the said section 3901.

As said in *Jeppi* v. *Brockman Holding Co.*, 34 Cal.2d 11, 15-16 [206 P.2d 847, 9 A.L.R.2d 1297]: " 'The reason for this limitation is that a corporation is organized for the pur-

pose of doing business of some nature, and, if so, its shareholders have the right to insist that the corporation continue for the purpose for which it was organized. A sale therefore, of all its property, or so much thereof as would prevent it from continuing in such business, would constitute a violation of the corporate contract.' "

The statute in question was enacted for the protection of shareholders and creditors of the corporation, and they alone have the right to object to the transfer of corporate assets in violation of the code section. ▪ Transactions, such as those herein made, are violative of the provisions of the statute, are voidable and may be rescinded and set aside at the election of a shareholder or creditor, for whose benefit alone the statute was enacted. (*Solorza* v. *Park Water Co.*, 86 Cal.App.2d 653, 658-659 [195 P.2d 523].) Plaintiff is such a shareholder and creditor.

The order appealed from denying the motion to vacate a judgment and enter a different judgment is reversed.

Fourt, Acting P. J., and Lillie, J., concurred.

A petition for a rehearing was denied June 22, 1964.